

AUCTION REAL ESTATE SALES CONTRACT

THIS CONTRACT, made this ___ day of _____, 2025, by and between:

("Seller"): Bankruptcy Estate of Hull Equity, LLC by Stephen Barnes, Chapter 7 Trustee, whose address is: 163 E Main Street, Suite 200, Lexington KY 40508

("Buyer"): <u>E2 Investment LLC or assignee,</u> whose address is: <u>120 Dewey Drive Ste 124, Nicholasville KY 40356</u>

**AGREEMENT TO PURCHASE**. In consideration of the sum as identified in Paragraph 2 below, the mutual covenants herein set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller agrees to sell to Buyer, by Deed of Special Warranty, and Buyer agrees to purchase from Seller, pursuant to the terms and conditions hereinafter set forth, the real property identified as and described as follows:

Legal Description: 1931 Grant Line Road, New Albany IN 47150

1. **High Bid Price** ............................................................................................................. $1,076,000

**10.00 % Buyer's Premium** ...................................................................................... $107,600

2. **Contract Purchase Price** .................................................................................$1,183,600

3. **Non-Refundable Down Payment/Deposit** .....................................................$118,360

In U.S. Funds, based on 10% or greater of the Total Purchase Price, to be held in a noninterest-bearing escrow account by the Chapter 7 Trustee.

**Balance of Purchase Price** ............................................................................ $1,065,240

In U.S. Funds, due at Closing, not including Buyer's Closing Costs or financing costs, prepaids or prorations, in immediately available cash or by confirmed wire transfer.

4. **CLOSING**. Closing shall take place with **CLLB** ("Closing Agent"), whose address is: **318 Pearl Street, Suite 200, New Albany, Indiana** on or before: **Thursday, January 8, 2026**, unless extended by the Seller (the "Closing Date"). The contact person is **Jason Lopp, phone: 812-725-8224**. At Closing, Seller shall deliver to Buyer a Deed of Special Warranty (the "Deed"), which shall convey fee simple title to the Property to Buyer without any warranties, including, without limitation, habitability or fitness for a particular purpose; and Buyer shall pay, or cause to be paid, Seller the Total Purchase Price. Seller and Buyer shall also execute and deliver any notices, statements, certificates, affidavits, releases or other documents required by this Contract, or applicable law. Possession of the Property shall be delivered at Closing, subject to those matters contained in the Deed, Title Opinion and this Contract. Time is of the essence in this Contract.

**EXHIBIT B**

5. **TAXES AND OTHER PRORATIONS**. All ad valorem taxes for the year 2025 assessed against the property are to be prorated to the date of the closing. In addition, operating expenses and utilities shall be prorated between Seller and Buyer as of the Closing Date. This Paragraph 5 shall expressly survive the Closing.

6. **CLOSING COSTS.**

(a) **Seller's Costs**. At Closing, Seller shall pay the fees for preparation of the Deed, and all costs relating to tax certificates and overnight courier fees and messenger charges on behalf of the Seller.

(b) **Buyer's Costs.** At Closing, Buyer shall pay the recording costs of the Deed and issuance of the Title Policy (as hereinafter defined), overnight courier fees and messenger charges on behalf of the Buyer, escrow fees (if any), Closing Agent's closing fees, any survey costs, and all additional sale or closing fees.

7. **TERMS.** This is a cash sale with Ten Percent (10%) down payment, with the balance due at Closing on or before **January 8, 2026**. This sale is not contingent upon financing or due diligence. BUYER ACKNOWLEDGES AND AGREES THAT BUYER'S OBLIGATIONS UNDER THIS CONTRACT ARE NOT CONTINGENT UPON BUYER OBTAINING A LOAN FROM ANY LENDER. ACCORDINGLY, BUYER SHALL BE OBLIGATED TO PERFORM ITS OBLIGATIONS UNDER THIS CONTRACT WHETHER OR NOT BUYER CAN OBTAIN A LOAN TO FINANCE THE PURCHASE OF THE PROPERTY.

8. **DOWN PAYMENT/ DEPOSIT AND CLOSING AGENT**. Buyer and Seller hereby acknowledge and agree that the Chapter 7 Trustee shall hold and deliver the Down Payment/Deposit, in accordance with the terms and conditions of this Contract, and that the Chapter 7 Trustee shall be relieved of all liability and held harmless by both Seller and Buyer in the event the Chapter 7 Trustee makes a disbursement of the Down Payment/Deposit the Bankruptcy Code and Orders of the Bankruptcy Court. The Chapter 7 Trustee shall be relieved from any responsibility or liability and held harmless by both Seller and Buyer in connection with the discharge of his duties hereunder provided that he acts in compliance with the Bankruptcy Code and Orders of the Bankruptcy Court. Both parties understand that the Buyer's Down Payment/Deposit is non-refundable unless the Seller fails to close this transaction.

9. **DISCLAIMER OF WARRANTIES ("AS-IS" CONVEYANCE).**

(a) Buyer warrants and acknowledges to and agrees with Seller and Auctioneer that Buyer is purchasing the Property in an "As-Is, Where Is" condition "WITH ALL FAULTS" and specifically and expressly without any warranties, representations or guarantees, either expressed or implied, of any kind, nature, or type whatsoever, from or on behalf of the Seller and the Deed will contain appropriate disclaimers to this effect.
(b) Buyer acknowledges to and agrees with Seller and Auctioneer that with respect to the Property, Seller and Auctioneer have not, do not, and will not make any warranties or representations, expressed or implied, or arising by operation of law, including, but in no way limited to, any warranty as to the value, physical condition, square footage, environmental condition, zoning, good repair, operability, habitability, tenant ability, suitability, merchantability, profitability, marketability, past or present compliance with any rules, regulations, covenants or restrictions, development potential or fitness for a particular use or purpose of the property.
(c) Buyer acknowledges that it is Buyer's responsibility to make such legal, factual and other inquiries and investigations, as Buyer deems necessary with respect to the Property. Buyer acknowledges that Buyer has executed this Contract based solely on its own independent due diligence investigations and findings, and not in reliance on any information provided by Seller or Auctioneer or their affiliates, agents, officers, employees or representatives. Buyer acknowledges that Buyer has not relied, and is not relying upon information, documents, sales brochures or other literature, maps or sketches, projections, pro forma statements, representations, guarantees or warranties (whether expressed or implied, oral or written,

material or immaterial) that may have been given or made by or on behalf of the Seller or Auctioneer. (d) Without in any way limiting the generality of the preceding subparagraphs (a) through (c), Buyer specifically acknowledges and agrees that Buyer hereby waives, releases and discharges any claim it has, might have had, or may have against Seller and Auctioneer with respect to the condition of the Property, either patent or latent.

10. **PROPERTY INSPECTION.** Buyer acknowledges that it has already conducted all necessary inspections (physical, legal, economic, environmental, archeological or otherwise) on the Property and is satisfied with its condition. The Property is conveyed "As-Is, Where Is" and Buyer has performed due diligence to review all property information and due diligence materials; independently verified any information deemed important including information available in public records; and inquired with public officials as to the applicability of and compliance with land use and environmental laws, building ordinances, zoning, health & safety codes, and any other local, state or federal laws and regulations.

11. **TITLE.** Buyer hereby acknowledges receipt of a title opinion (the "Title Opinion") issued by Church Langdon Lopp & Banet LLC ("CLLB"). Buyer hereby agrees to accept title to the Property subject to (i) all standard exclusions and printed exceptions set forth in the Title Opinion, including all matters that would be disclosed by a current and accurate survey of the Property; (ii) liens for taxes not yet due and payable; (iii) easements for public utilities affecting the Property; (iv) all other easements or claims to easements, covenants, restrictions and rights-of-way affecting the Property; (v) rights and claims of parties in possession; and (vi) all title exceptions referenced in the Title Opinion (the foregoing title matters are herein referred to as the "Permitted Title Exceptions"). Any applicable zoning ordinances, other land use laws and regulations, together with taxes for the current year and those matters, if any, which are waived by Buyer pursuant to this Paragraph 11, shall also be deemed Permitted Title Exceptions.. At Closing, if Buyer so desires and at its cost, shall cause the CLLB to issue and deliver to Buyer an owner's policy of title insurance (the "Title Policy") insuring Buyer's fee simple estate in the Property in the amount of the Total Purchase Price, subject to the Permitted Title Exceptions.

Buyer also acknowledges and agrees that:
a. Maps and depictions included in the marketing material for the auction are for illustration purposes only and neither Seller nor Auctioneer warrants or guarantees any of these materials or other information to be accurate or complete.
b. Any fencing situated on the Property is not necessarily an indication of the Property boundary.
c. Buyer shall be responsible for its own due diligence regarding the availability and/or accessibility of any utilities or the suitability for building on the Property. In addition, the Buyer shall be responsible for obtaining any and all permits for installation of utilities, wells, septic systems, and/or any costs related to such installation. Permits, tanks, meters, lines, and any other applicable fees shall be at the Buyer's expense.
d. Only the fixtures, machinery and equipment currently attached to or located upon the Property, excluding all trade fixtures, equipment, inventory, signage and other personal property owned by Tenant AutoZone or any other tenant or occupant of the Property, will be conveyed to Buyer.
e. The Property is selling subject to restrictive covenants and easements as shown in the Title Opinion and any survey of record.

12. **FIXTURES AND PERSONAL PROPERTY.** Only the fixtures, machinery and equipment currently attached to or located upon the Property, excluding all trade fixtures, equipment, inventory, signage and other personal property owned by Tenant AutoZone or any other tenant or occupant of the Property, will be conveyed to Buyer and no other personal property will be conveyed with the Property.

13. **TITLE DEFECTS**. If the Title Commitment reveals a defect in title which is not one of the Permitted Title Exceptions, or if prior to the Closing a new defect in title is disclosed by an updated endorsement to the Title Commitment, which defect is not one of the Permitted Title Exceptions, prior to the Closing Date, Buyer may either waive such defect or give written notice to Seller and Closing Agent no later than five (5) days from the date of discovery of such defect in title, whereupon Seller may, at its option, attempt to cure such defect prior to Closing or decline to cure such defect. If Seller is unable or unwilling to cure, on or before the Closing Date, any defect as to which Buyer has notified Seller as herein provided and if Buyer does not waive such defect on or prior to the Closing Date by written notice to Seller, this Contract shall be terminated without liability to either party and the Down Payment/Deposit shall be returned to the Buyer. Seller shall have the right, at its sole election, to extend the Closing Date by not more than sixty (60) days to attempt to cure any such defect in title.

14. **COMMISSIONS.**
(a) Brokerage. Buyer warrants and represents that Buyer _____ is / _____ is not represented by a Buyer's Broker in this transaction. If Buyer is represented by a Buyer's Broker, the Buyer's Broker's name is: _____ (ID: _____). The Buyer's Broker shall be paid a 2% referral fee. Buyer's Broker must have performed all requirements of the Buyer Broker Guidelines as provided by the Auctioneer. Failure to properly register or comply with the provisions of the Guidelines will disqualify the Buyer's Broker from receiving any commission.
(b) Agency Disclosure. Auctioneer has acted as agent for Seller in this transaction and is to be paid a commission by Seller pursuant to a separate written agreement between Seller and Auctioneer.

15. **BREACH OF CONTRACT BY SELLER.** If Seller defaults in the performance of any of its obligations pursuant to this Contract, and Closing fails to occur by reason thereof, Buyer, as its sole remedy, may terminate this Contract and receive the Down Payment/Deposit, or waive the default and proceed to Closing. In no event shall Seller or Auctioneer be liable for any damages including special, incidental or consequential damages, or economic loss and/or attorney fees.

16. **BREACH OF CONTRACT BY BUYER**. In the event the purchase and sale contemplated in this Contract is not consummated as a result of Buyer's default, Buyer's Down Payment/Deposit shall be forfeited to Seller, and Seller shall have all rights as allowed by law to file for damages, specific performance or cancellation of this transaction, with Buyer to be responsible for all costs of suit, including attorney's fees and court costs. In addition, in the event that Seller is unable to collect on any check delivered by Buyer to Seller or Closing Agent, then, at Seller's option, without notice, this Contract may be terminated immediately and any Down Payment/Deposit held by Seller or Closing Agent shall be paid to Seller, and Seller may pursue any rights and remedies available at law or in equity.

17. **CASUALTY.** Except as herein provided, all risk of loss with respect to damage to the Property shall be borne by Seller until the Closing; thereafter all risk of loss shall be borne by Buyer. In the event that the Property is, in the opinion of Seller, significantly damaged or is destroyed by fire or other casualty or hazard prior to Closing, Seller shall have the option to restore the Property to its pre-casualty condition or to cancel this Contract and Buyer's Down Payment/Deposit shall be returned as a complete and final settlement to Buyer of all Seller's obligations hereunder. Should Seller desire to restore the Property to its pre-casualty condition, Seller shall so notify Buyer and thereafter have 120 days to complete such restoration, with the Closing Date to be postponed accordingly.

18. **NOTICES**. All notices under this Contract shall be deemed delivered when personally delivered or mailed postage prepaid, certified or registered mail, return receipt requested, or when delivered by a courier service to the addresses of the parties set forth in the preamble of this Contract. Either party may change its

address for notice purposes by giving written notice thereof to the other party in accordance with the terms hereof. A copy of all notices given hereunder shall be delivered to Auctioneer and Closing Agent.

19. **WAIVER**. No failure or delay on the part of Seller in exercising any right of Seller nor any action on the part of Seller or any course of dealing or partial performance shall be deemed a waiver of any right of Seller set forth herein or a modification of any terms set forth herein.

20. **ENTIRE AGREEMENT; AMENDMENT**. This written Contract and any Exhibits, Schedules and Addenda attached hereto and made a part of this Contract signed by Buyer constitute the entire and complete agreement between the parties hereto and supersede any prior oral or written agreements between the parties with respect to the Property. This Contract may not be amended, altered, modified or discharged except by an instrument in writing signed by Buyer and Seller.

21. **SEVERABILITY.** The invalidity of any provision of this Contract shall not affect the validity or enforceability of any other provision set forth herein.

22. **ASSIGNMENT**. Buyer may not assign this Contract or Buyer's rights hereunder without the prior written consent of Seller, which consent may be given or withheld in Seller's sole discretion.

23. **BINDING EFFECT.** This Contract shall be binding upon and inure to the benefit of the parties hereto, and their respective successors, personal representatives, legal representatives, heirs and permitted assigns.

24. **COUNTERPARTS**. This Contract may be executed in one or more counterparts, each of which shall have the force and effect of an original, and all of which shall constitute but one document.

25. **ACKNOWLEDGEMENT**. If Buyer is a natural person, Buyer certifies that he or she is of legal age and has full legal capacity and authority to understand, execute and deliver this Contract on behalf of himself or herself. If Buyer is a domestic or foreign entity, Buyer represents to Seller that the party executing this Contract on behalf of such entity has the authority to execute this Contract on behalf of such entity, and that such entity shall be bound by the terms and conditions contained herein.

26. **BANKRUPTCY COURT APPROVAL.**
(a) This Contract and the sale of the Property contemplated hereby are expressly conditioned upon, and shall be subject in all respects to, entry of a final, non-appealable order of the United States Bankruptcy Court having jurisdiction over the bankruptcy case of Hull Equity, LLC (the "Bankruptcy Court"), approving this Contract and authorizing the sale of the Property (the "Sale Order").
(b) Buyer acknowledges and agrees that, prior to the entry of the Sale Order, this Contract is subject to higher and better offers and may be terminated by Seller if the Bankruptcy Court approves a sale of the Property to another purchaser.
(c) In the event that (i) the Bankruptcy Court declines to enter the Sale Order; or (ii) the Bankruptcy Court enters an order approving the sale of the Property to a purchaser other than Buyer; or (iii) this Contract is terminated by Seller or the Chapter 7 Trustee pursuant to any order of the Bankruptcy Court, then Buyer's sole and exclusive remedy shall be the return of the Down Payment/Deposit (without interest), and upon such return this Contract shall be deemed null and void and neither party shall have any further rights or obligations hereunder, except for those provisions which expressly survive termination. Buyer expressly waives any claim for specific performance, damages (including without limitation, consequential, incidental, or punitive damages), costs or attorney's fees against Seller, the bankruptcy estate, the Chapter 7 Trustee, or any of their respective professionals or representatives in any such event.

27. **SALE FREE AND CLEAR; ACCEPTANCE OF TITLE.**

(a) Buyer acknowledges and agrees that the Property is being sold by Seller, through the Chapter 7 Trustee, pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code"), free and clear of liens, claims, encumbrances and interests (collectively, "Liens") EXCEPT as to the lease of AutoZone Development, LLC ("Tenant AutoZone"), to the extent provided in the Sale Order, with any such Liens to attach to the sale proceeds as set forth in the Sale Order.

(b) Buyer further acknowledges and agrees that, notwithstanding anything to the contrary in this Contract, Buyer shall accept title to the Property in the condition and form approved by the Bankruptcy Court and as reflected in the Sale Order. Buyer shall have no right to object to or refuse to close on account of the manner in which any Liens are treated or satisfied pursuant to the Sale Order, provided that the Sale Order authorizes the conveyance of the Property to Buyer free and clear of Liens (other than the lease to Tenant AutoZone, and the Permitted Title Exceptions and any matters expressly assumed by Buyer under this Contract).

28. **LIMITATION OF LIABILITY; NO PERSONAL RECOURSE.**

(a) Buyer acknowledges and agrees that Seller is the bankruptcy estate of Hull Equity, LLC and that this Contract has been executed by Stephen Barnes solely in his capacity as Chapter 7 Trustee (the "Trustee"), and not individually.

(b) Any and all obligations of Seller and/or the Trustee under this Contract shall be payable and enforceable solely against the assets of the bankruptcy estate of Hull Equity, LLC, and not against the Trustee personally or against any of the Trustee's or Seller's professionals, agents, or representatives. In no event shall the Trustee, in his individual capacity, or any such persons have any personal liability of any kind, whether in contract, tort, or otherwise, arising out of or in connection with this Contract or the transactions contemplated hereby.

(c) Buyer hereby waives and releases any and all claims, causes of action, and remedies it may have or assert, now or in the future, against the Trustee in his individual capacity and against the Trustee's and Seller's professionals, agents, and representatives, arising out of or related to this Contract, the auction, or the sale of the Property, and agrees that any claim it may assert shall be limited to a claim against the bankruptcy estate of Hull Equity, LLC in the Bankruptcy Court.

IN WITNESS WHEREOF, the parties hereto have duly executed this Contract as of the day and year first above written.

Contact information for the Buyer
Name: E2 Investment LLC
Current address: 120 Dewey Drive Ste 124, Nicholasville KY 40356
Phone: 859-227-6826
Email address: preetpalsidhu@gmail.com

Seller: Bankruptcy Estate of Hull Equity, LLC
By: _____
    Stephen Barnes, Chapter 7 Trustee

Buyer: E2 Investment LLC or assignee
By: _____
Name: _____
Title: _____
Date: _____